**FILED**

**December 6, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

State of West Virginia,
Plaintiff Below, Respondent

vs.)  No. 21-0638 (Greenbrier County CC-13-2018-F-145)

Carl Wayne Rich,
Defendant Below, Petitioner

# MEMORANDUM DECISION

Petitioner Carl Wayne Rich appeals the circuit court's July 16, 2021, order imposing a life recidivist sentence, with mercy, following his conviction for voluntary manslaughter.[1] On appeal, he seeks to have this Court remand to the circuit court for resentencing, and he claims error in the circuit court's denial of his motion for a new trial. This Court's review is conducted under the following standard:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 1, *State v. Jenner*, 236 W. Va. 406, 780 S.E.2d 762 (2015) (citation omitted). And upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. Proc. 21.

During a methamphetamine-fueled argument that developed between petitioner and Jeffrey A. Boothe Jr. (the "victim") following petitioner's inability to locate his cell phone, petitioner shot and killed the victim with a compound bow. At petitioner's trial on the ensuing murder charge, the State impeached its own witness, Franklin Bailes, by eliciting testimony from the investigating officer concerning Mr. Bailes's prior statement to the police, which statement

---

[1] Petitioner appears by counsel Paul S. Detch and R. Grady Ford. The State appears by counsel Patrick Morrisey and Mary Beth Niday.

contradicted Mr. Bailes's trial testimony in certain respects.[2] Petitioner argues that the impeachment was improper because the State did not actually seek to impeach Mr. Bailes but, instead, sought to introduce hearsay under the guise of impeachment and because the trial court did not conduct the requisite balancing under Rule 403 of the West Virginia Rules of Evidence. Though the circuit court found that any error was harmless, petitioner disagrees, claiming that the jury returned a "compromise verdict" for which neither party argued.[3] Petitioner maintains that the testimony regarding the statement "almost certainly affected the outcome." We need not delve into the particulars of the testimony at issue or how it was placed before the jury because, assuming (without deciding) that there was some error in its admission, petitioner has failed to convince this Court that the circuit court wrongly concluded that any error was harmless.

> [W]hen dealing with the wrongful admission of evidence, we have stated that the appropriate test for harmlessness articulated by this Court is whether we can say with fair assurance, after stripping the erroneous evidence from the whole, that the remaining evidence was independently sufficient to support the verdict and the jury was not substantially swayed by the error.

*State v. Guthrie*, 194 W. Va. 657, 684, 461 S.E.2d 163, 190 (1995). And "[t]he more tangential the error to the ultimate issue of guilt, the less likely its prejudicial impact." *State v. Atkins*, 163 W. Va. 502, 514, 261 S.E.2d 55, 62 (1979). Notably, petitioner fails to analyze the evidence, stripped of the challenged testimony, but upon our undertaking of such an analysis, we find that the evidence was sufficient to support the voluntary manslaughter verdict. The unchallenged evidence was that petitioner got into an argument with the victim, left the room to retrieve a compound bow and arrow, returned to the room, continued arguing with the victim, pointed the compound bow at his victim, pulled the arrow back to some degree, and released the arrow. Petitioner then fled the scene without rendering aid and lied to others, including law enforcement, about having shot the victim, claiming his brother was the shooter. *See* Syl. Pt. 3, *State v. McGuire*, 200 W. Va. 823, 490 S.E.2d 912 (1997) ("Gross provocation and heat of passion are not essential elements of voluntary manslaughter, and, therefore, they need not be proven by evidence beyond a reasonable doubt. It is intent without malice, not heat of passion, which is the distinguishing feature of voluntary manslaughter."). We further find that the jury was not swayed by any error because Mr. Bailes's statement to the police was not admitted as substantive evidence, and the court gave a limiting instruction, which informed the jury that the testimony concerning Mr. Bailes's prior statement could be used only to judge Mr. Bailes's credibility and was not admitted as proof of petitioner's guilt.

---

[2] Contrary to his testimony at petitioner's trial, Mr. Bailes asserted in his statement to the police that petitioner instructed him to lock the door during the argument that resulted in the victim's death, that petitioner ordered Mr. Bailes to leave with him immediately after he shot the victim, and that petitioner threatened Mr. Bailes and his family after the shooting.

[3] The State argued that petitioner committed first-degree murder while petitioner argued involuntary manslaughter.

Next, petitioner contends that he was denied due process and a fair trial by the trial judge's intra-circuit transfer of his case to another judge upon the State's filing of the recidivist information. Without offering applicable legal support, he claims that he was entitled to notice and a hearing on the transfer. Under Rule 2.11(A) of the Code of Judicial Conduct, "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: (1) The judge has . . . personal knowledge of facts that are in dispute in the proceeding," and "(5) The judge: . . . (b) served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding." The original trial judge, in her prior role as prosecuting attorney, represented the State in obtaining at least one of the predicate felonies outlined in the recidivist information. Therefore, she participated in and had personal knowledge of facts in dispute in the recidivist proceeding, and her disqualification was required under Rule 2.11(A).[4] Accordingly, we find no error in the transfer or the lack of a hearing prior to effectuating the required transfer.

Finally, petitioner argues that, prior to imposition of his life recidivist sentence, a jury needed to have found that the predicate offenses were crimes of actual or potential violence because "[a]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000) (citation omitted). Petitioner's argument conflates imposition of a life recidivist sentence with a determination of whether that life recidivist sentence violates proportionality principles. It is not that his prior offenses were actually or potentially violent that increased the maximum penalty or resulted in imposition of the life sentence; rather, it was petitioner's commission of two felonies[5] prior to the third here addressed that resulted in the imposition of his life recidivist sentence: "When it is determined . . . that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." W. Va. Code § 61-11-18(c) (2000). A court evaluates the felonies for violence in determining whether the resultant life recidivist sentence is unconstitutionally disproportionate. *See* Syl. Pt. 12, *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019) (setting forth that two of the three felony convictions giving rise to a life recidivist sentence must have involved "actual violence," a "threat of violence," or "substantial impact upon the victim such that harm results" to survive a proportionality challenge).[6] So, petitioner has demonstrated no error.

---

[4] Petitioner does not claim that the original trial judge should not have presided over his trial.

[5] Petitioner was convicted of delivery of a controlled substance in 2010 and burglary in 2004.

[6] Petitioner raises one additional assignment of error, claiming that the recidivist information was not timely filed. West Virginia Code § 61-11-19 requires that the recidivist information be filed "immediately upon conviction and before sentence," and we have held that "the immediacy requirement is satisfied if the State files the information before sentencing and

(continued . . .)

3

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** December 6, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

---

prior to the end of the term of court within which the defendant was convicted." *State ex rel. Appleby v. Recht*, 213 W. Va. 503, 510, 583 S.E.2d 800, 807 (2002). The recidivist information was filed prior to sentencing and within the same term of court in which petitioner was convicted. There is no merit to his claim of untimeliness.